THE MARINE BANK OF CHICAGO, Appellant, *v.* THOMAS L. RUSHMORE *et al.*, Appellees.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A bill of exceptions need not declare that it contains all the evidence; if it appears that such is the case. The declaration that "the testimony here closed," will be considered as equivalent to the assertion that all the evidence is presented.

Where a bank undertakes to collect for a customer, and does so, and upon the receipt of the funds, mixes them with the general funds of the bank, the money collected becomes a deposit to the credit of the customer, like other general deposits, to be governed by the same rules.

If the funds received by the bank on the collection are or become depreciated, the bank must suffer the loss.

A tender of money must be kept good, to avail the party tendering.

A note payable in "Illinois currency," must be satisfied by something equivalent to coin.

ON the 3rd day of May, 1861, the appellees, doing business in the city of New York, sent for collection by mail to the appellant, at Chicago, five certificates of deposit, payable in Illinois currency, each dated April 19, 1861, and made by F. Granger Adams, of Chicago, by whom they were made payable. The letter enclosing these certificates instructs the bank that when paid, it shall hold the proceeds to June 1, 1861, and

then remit by draft on New York, less the current rate of exchange at that time.

This letter of instructions contains a P. S., as follows : " If in the interval of thirty days from May 2nd, exchange can be procured on New York at three per cent., you can use your discretion and remit to us, but do not at any higher rate."

The above letter of instructions was received by the bank at Chicago, and the certificates were duly collected in the then Illinois currency, *i. e.,* Illinois bank notes, and put to the credit of the appellees.

When the collection of the certificates was made, the currency was depreciated. The value or price of gold, in currency, was nominally quoted ten per cent. It was still depreciating, and so continued until the 18th day of May, when the whole system of banking and currency in the State was prostrated.

On the 30th day of May, appellees directed the bank by letter, not to remit, as they thought exchange would be down in a few days to one or two per cent. To which the bank replied on the 1st of June, that the business community refused to receive Illinois bank notes only at sixty cents on the dollar.

The evidence in this case, in reference to the currency, is substantially the same as that reported in the 27th Illinois, page 525, *Marine Bank* v. *Chandler.*

The jury found the issues for the plaintiffs below, and assessed their damages at $875.62.

A motion for a new trial was overruled.

Plaintiffs' instructions were then given to the jury by the court, as follows :

The court instructs the jury, that if they believe, from the evidence, that the plaintiffs sent the certificates of deposit, given in evidence, to the defendants for collection, which were collected by the defendants, and there was no express or implied agreement as to the relation which should exist between the parties—that no agency was created as to the funds collected, except to collect the certificates in the funds in which they were payable, and to hold the same subject to demand of the plaintiffs.

If the jury believe, from the evidence, that the Marine Bank received the proceeds of the certificates of deposit sent by plaintiffs, and credited the plaintiffs with the same, the relation of debtor and creditor is created between the defendants and the plaintiffs, so far as to require the payment to plaintiffs of the same funds in which the certificates were payable, on the demand of the plaintiffs.

The court was then asked to give the following instructions for the defendant below, which were refused :

If the jury believe, from the evidence, that defendants acted as agents of the plaintiffs, and acted for them as bankers according to the ordinary and usual custom of bankers, and collected, under instructions from plaintiffs, the amount in controversy in this case, in what was understood by all parties to be a depreciated currency, and that said defendants, without any want of ordinary and usual diligence, in like cases, held the funds collected at the request of plaintiffs, then defendants are only responsible for the same kinds of funds collected, and a tender of said funds at the time of the demand, was a good tender in discharge of the contract, and plaintiffs cannot recover.

The court is requested to instruct the jury, that plaintiffs cannot recover under the money counts, if the evidence only shows the authorized receipt by defendants of Illinois bank notes.

If the jury believe, from the evidence in this case, that plaintiffs authorized defendants to take the amount of their demand in depreciated or non-convertible currency, or Illinois bank notes, at their risk, and that defendants held said currency according to the usual custom of bankers, then the defendants are only liable for the value of the currency, when or at the time the same was demanded, with interest.

If the jury believe, from the evidence, that according to the agreement and understanding between the parties in this case, the defendants acted according to the instructions of the plaintiffs, in collecting the demand in question in depreciated Illinois currency, greatly below the par value of coin or specie, and held such currency afterwards at the request of, or

according to the instructions of plaintiffs, then the risk of depreciation was assumed by the plaintiffs as principals, and they can only recover the *real value* in coin or money of such currency, at the time of demand made in June, 1861.

If the jury believe, from the evidence, that defendants acted as agents for plaintiffs, and as such collected the amount claimed in this suit in Illinois currency, according to the request or instructions of said plaintiffs, and then held the same funds according to such instructions, and that said funds became depreciated in value below coin or specie, then the law is, that plaintiffs can only recover the value of such funds at the time of plaintiffs' demand on the 14th of June, 1861.

If the jury believe, from the evidence, that defendants collected the amount claimed in this case, as the agents of the plaintiffs, and, according to the instructions of said plaintiffs, collected said claim in Illinois currency, which afterwards became depreciated in value below that of coin or specie, and that the said funds were held at the request of said plaintiffs ; in that case plaintiffs are entitled only to the value of said funds at the time of the demand made on the 14th of June, 1861.

The errors assigned are, That the court below erred in overruling the motion of defendants for a new trial.

The court erred in admitting improper testimony to go to the jury, under the counts contained in the declaration.

The court erred in giving improper instructions to the jury.

The court erred in refusing the instructions to the jury asked for by said defendants.

The verdict is against the law and the evidence, and against the instructions given in the case.

FULLER & McCAGG, and T. HOYNE, for Appellant.

The general rule in all such cases as this is well established, that the agent is bound to the use of all reasonable care and diligence, the same that a reasonable man under similar circumstances would take of *his own affairs.* He is to conform to common usage in the absence of specific instructions, and

the loss, if any, is that of his principal. 2 Parsons on Cont. 73.

We insist, that having tendered and offered plaintiffs below the kind of funds collected, that we were not at all in default; and that in any event, the same could not be recovered under the counts in the declaration, which contains only the "*money counts.*" *Scott* v. *Conover*, 1 Halst. 225; *Kirkpatrick* v. *McColloch*, 3 Humph. Tenn. 171; *McCormick* v. *Trotter*, 10 Serg. & R. 94; *Farwell* v. *Kennett*, 7 Mo. 596; *Stevenson* v. *Unkefer*, 14 Ill. 105; *Anderson* v. *Ewing*, 3 Littell, 245, the principles of which are affirmed and approved in *Smith* v. *Dunlap*, 12 Ill. 184.

J. E. GAREY, and PORTER & STEELE, for Appellees.

These certificates were for "$945.21 Illinois currency," and they were "payable in like funds" at any time the certificates should be returned. "Currency" is the general term for the money medium, or that which circulates as and for money, in trade and business transactions. The term, unqualified and unexplained, means the standard currency of the country. "Illinois currency" means the currency of Illinois. The certificates being for currency or current funds, and being payable in "like funds," called for current money or current bank notes or par funds. There is no foundation for any suggestion to the effect, that if we had held the certificates until we made the demand on the bank, we could only have got bank notes of Illinois banks greatly depreciated, and therefore we should not ask more of the appellant. *Moore* v. *Morris*, 20 Ill. 257; *Trowbridge* v. *Seaman*, 21 Ill. 101; *Swift* v. *Whitney*, 20 Ill. 144; *Judah* v. *Haines*, 19 Johns. 144; *Keith* v. *Jones*, 9 Johns. 120.

The record does not show that the bill of exceptions contains all the evidence given in the case, and the presumption of law is, that there was evidence to justify and sustain the verdict.

The appellant, a bank, being chargeable with the receipt of current funds on the collection of the certificates, and having, on collecting the same, given credit for "$945.21," the

amount thereof, and having used the funds collected, is liable for the above amount. *Corbit* v. *The Bank of Smyrna*, 2 Harrington, 235; *President and Bank of Kentucky* v. *Wister*, 2 Peters, 318; *Bank of Missouri* v. *Benoist*, 10 Mo. 519; *Edwards* v. *Morris*, 1 and 2 Ohio, 241; *Bank of U. S.* v. *Waggoner*, 9 Peters, 378.

We are bound to presume that the appellant received specie for the notes they received on the certificates, or might have done so on presentation of the same. *Philips* v. *Blake*, 1 Metc. 156.

When a bank makes a collection for a customer, and holds the proceeds, which pass into the general funds of the bank, the relation of debtor and creditor arises, and not that of principal and agent, and all risk as to the funds is that of the bank. Story on bailments, sec. 88; Edwards on Bailments, p. 66; *Commercial Bank of Albany* v. *Hughes*, 17 Wend. 100; *Smedes* v. *Bank of Utica*, 20 Johns. 379, 380; *Chapman* v. *White*, 2 Selden, 417; *Munn* v. *Burch*, 25 Ill. 35; *Matter of Franklin Bank*, 1 Paige, 249; *U. S. Bank* v. *Bank of Georgia*, 19 Wheat. 342; *Corbit* v. *Bank of Smyrna*, 2 Harr. 235; *Wray* v. *Tuskegee Ins. Co.*, 34 Ala. 58; *In matter of Stafford*, 11 Barb. 354.

Granting that the bank may be regarded as agent, if an agent mingles the funds of his principal with his own, or uses them, he becomes a debtor of his principal. *In matter of Stafford*, 11 Barb. 354; *Wren* v. *Kirton*, 11 Vesey, Jr. 382; *Case* v. *Abeel*, 1 Paige, 402; Story on Agency, sec. 228 and note, sec. 229 *et seq.*; 8 Ohio State Rep. 465—482.

That the bank was directed to hold the amount collected till June 1st, does not in any way affect the case unless favorably for the appellees.

The calculation or supposition that money collected or deposited will not be called for immediately, is the basis and inducement of banking business to a great extent. *Smeedes* v. *The Bank of Utica*, 20 Johns. 379, 380; Same case in error, 3 Cow. 662, 683, 684.

The common counts for money had and received and account stated were appropriate and sufficient. *Bank of*

*Missouri* v. *Benoist*, 10 Mo. 519; *Pickard* v. *Banks*, 13 East, 20; *Heald* v. *Bennett*, 1 Doug. Mich. 513; *Welch* v. *Frost*, 1 Manning, 30; *Gordon* v. *Camp*, 4 Fla. 422; *Corbit* v. *Bank of Smyrna*, 2 Har. 235; *Ehrensberger* v. *Anderson*, 3 Ex. 147; *Bank of Kentucky* v. *Wister*, 2 Peters, 318; *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333; *Fairbanks* v. *Blackington*, 9 Pick. 93; *Floyd* v. *Day*, 3 Mass. 403; *Hemmenway* v. *Bradford*, 14 Mass. 121; *Vermont State Bank* v. *Stoddard*, Brayt. V. 24; *Andrew* v. *Robinson*, 3 Camp. 198; *New Hope Del. Bridge* v. *Perry*, 11 Ill. 467; *Ainslee* v. *Wilson*, 7 Cow. 668; *Harrington* v. *McMorris*, 1 Eng. C. L. 123.

As to defendant's instructions refused, the first instruction asked was erroneous, because the tender would not be " in discharge of the contract," and the tender could be of no avail without being kept good by bringing the funds tendered into court. *Conwell* v. *Humphrey*, 9 Ind. 136; *De Wolf* v. *Long*, 2 Gilm. 679; *Edwards* v. *Morris*, 1 and 2 Ohio, 241.

BREESE, J. This was an action of assumpsit, brought in the Superior Court of Chicago by the appellees against the appellant. The declaration only contains the common money counts and account stated. The plea was non-assumpsit, and a verdict and judgment for the plaintiff, and a motion for a new trial, which was overruled. A bill of exceptions was filed, and the record brought here by defendants by appeal, who assign for error, 1, The overruling the motion for a new trial; 2, in admitting improper testimony; 3, in giving improper instructions to the jury; 4, in refusing the instructions asked for by the defendants; and 5, that the verdict is against the law and the evidence, and against the instructions of the court.

A preliminary objection is made by the appellees, that the bill of exceptions does not purport to contain all the evidence, and therefore this court cannot know there was not evidence sufficient to support the verdict.

In the case of *Stickney et al.* v. *Cassell*, 1 Gilm. 420, and again in the case of *Harris et al.* v. *Miner*, at this term, this

court held that it was immaterial whether the fact is expressly stated that the bill of exceptions contains all the evidence, or is manifested in any other way.

It is not expressly stated in this bill of exceptions, that it contains all the evidence offered, but it states, after reciting the evidence, "the testimony here closed." This is equivalent to an express averment that it was all the evidence heard in the cause. In practice, testimony is never considered closed, until all the evidence is heard.

The first error is not pressed upon the consideration of the court, otherwise than as involved in the argument presented on the other assignments of error, which being disposed of, will dispose of the case.

The defendants have discussed the several errors, and presented, very ably, their views upon the whole case, and we will pursue the course they have marked out.

The first points they make are, that in receiving the certificates and in collecting the money upon them, appellants were bailees only—that they acted merely as the agent of the appellees, and made the collections strictly in accordance with their letter of instructions of May 30, 1861, and were bound only to the use of such reasonable care and diligence as a prudent man, under similar circumstances, would take of his own affairs; and that having tendered, and offered to appellees, the same kind of funds as those collected, they were not in default; and that in this event no recovery could be had of them under the counts in this declaration, as they are counts for money only.

The question is, did they receive these certificates, collect them and put the proceeds in their vaults, as the proof shows they did, by mixing them up with their own moneys, as an agent merely, and was the relation between the parties that of principal and agent? So far as the receipt of the certificates and their collection is concerned, the appellants were the agent of appellees, and there the agency terminated. When the money was collected, it was mixed up with the general funds of the bank. It then became a deposit by the appellees, and the relation of debtor and creditor arose. It was a gen-

eral deposit to their credit, to be governed by the rules which obtain in ordinary cases of deposits of money with banking corporations.

The doctrine is well established, where money is deposited in a bank, in the ordinary course of business, it does not raise a contract of bailment. The transaction amounts to a loan, without interest, and creates the relation of debtor and creditor; the bank receives the money deposited, and undertakes to repay the same on demand, at all events. The funds are mingled with other moneys, and become an absolute debt due from the bank, for which it is liable, even though the money be lost without any fault on its part. Edwards on Bailments, 66. To the same effect is Story on Bailments, sec. 88.

With regard to a special deposit of coin, or bills, in a bank, they do not go into the general mass in the bank, they cannot be touched or used for any purpose by the bank, and must be restored to the depositor *in individuo*. Over such a deposit the bank is held only to the same care they take of their own funds, and are liable only for gross negligence, if it be lost or purloined from them. *Foster* v. *Essex Bank*, 17 Mass. 479.

The courts of this country recognize this as the doctrine. *U. S. Bank* v. *Bank of Georgia*, 10 Wheaton, 342; *Commercial Bank of Albany* v. *Hughes*, 17 Wend. 100; *In the matter of the Franklin Bank*, 1 Paige Ch. 249.

But the appellees contend, if the appellants were the agent simply, they, by mingling the funds of their principal with their own, or using them, became the debtor of their principal. This is the rule, as we understand it. Such an act makes the agent liable for all consequences, and to be charged in an action, if the fund is not restored on demand. *Case* v. *Abeel*, 1 Paige, 393—402; *Wren* v. *Kirton*, 11 Vesey, Jr., 377; Parsons' Mercantile Law, 302.

In either view, the relation of debtor and creditor subsisted. The bailment terminated when the certificates were collected, and the appellees were credited on the books of the bank with the proceeds, the bank mingling them with their own funds. In this view, the citation from Story on Agency, sec. 202, has no application.

The case of the *Etna Ins. Co.* v. *The Alton City Bank,* 25 Ill. 246, is in no respect like this case. There, a note made by a person living in Missouri was sent to the Alton City Bank for collection, and they sent it to their correspondent in St. Louis, who neglected to present it in proper time, and give notice to the indorser of non-payment. It is wholly a different case from this, and governed by different principles, as the authorities there cited abundantly show.

The appellants insist, if they are deprived of the right to occupy the position of a mere agent to receive and collect the certificates, they are made guarantors of Illinois currency, and were so treated by the court below. They say that the appellees had full knowledge and advice of the state of the currency, and undertook all the risk of depreciation by expressly directing the proceeds of the certificates to be held in Chicago until the first of June, nearly a month after the collection.

The idea that appellants have been treated as guarantors of Illinois currency, is in ône sense correct. Their own testimony shows that up to the 30th of May, appellees had no knowledge of the state of the money market at Chicago, for in their letter of that date they say, " Thinking that exchange will be down to old rates, namely, one per cent., in a very few days, you will not remit. The time specified was 1st June, and we think that in a very few days, you will be able to remit at about one or two per cent.," etc. And appellants, in reply of June 1st, say, " You are much mistaken with regard to the rates of exchange. It cannot be had to-day better than sixty cents on the dollar." If, then, the appellants supposed at this date, they were holding a particular kind of funds at the risk of the appellees residing in New York, they surely would not have permitted so many days to pass without giving them the necessary information. Their failing to do so shows, either they intended to guarantee the money, or, that, being in any event responsible for the amount, it was not important that appellees should know anything about the state of the money market. If they were agents to collect this money and remit it, they certainly were very remiss in their duty, in not inform-

ing their constituents of the downward tendency of the exchanges. What if appellees did instruct appellants not to remit, was not this for the benefit of appellants? It is generally understood the longer a bank can keep a deposit for which they pay no interest, and on which they make money by loans, it being in fact, an increase of their capital, and on which they can extend their line of discounts, that a favor is intended to the bank. They form a large part of banking facilities. The appellants did not regard this as a special deposit, the risk of depreciation to be borne by the depositors, for it went into the general moneys of the bank, and the cashier states, a special deposit is set apart at the risk of the depositor. Surely, it cannot be pretended, this was a special deposit at the risk of the depositors for depreciation, embezzlement or felony, or in any other respect. These proceeds were placed to the credit of the depositors, and therefore were not held by the bank as bailees, and if they are lost, even without the fault of the bank, the depositors are entitled to payment. This is shown by the authorities we have already cited, and reference may be had to the case of the *Commercial Bank* v. *Hughes*, 17 Wend. 94, to the same effect.

The appellants insist, and this is their third point, that they have not been in default at all, because they tendered and offered appellees the kind of funds they collected on the certificates, and that in no event could they be recovered under the counts in the declaration which are the common money counts only.

This presents two points for consideration. How does it appear that appellants tendered, or offered to pay, in the same kind of funds they collected? The record nowhere shows in what description of funds the certificates were paid. There is an entire absence of proof on that point, and the inference is not an unfair one, that they were collected in coin or its equivalent. But if they were not, there is no proof those proceeds were entered to the credit of appellees, as anything but dollars—coin. The cashier's letter of the 6th of May, does not indicate the credit is for trash, but for $945.21—coin of the country. The letter speaks this language of the ap-

pellees : You have credit here for nine hundred and forty-five dollars and twenty-one cents, no more, no less. This is the common sense, as well as legal view of the transaction. Again, did the appellees authorize appellants to collect these certificates in anything but dollars? The original deposit in favor of Searles, was Illinois currency. Where is the proof that this currency was not the same as dollars? The cashier states that "currency" means "current bank notes," "bankable funds." He does not define the term "Illinois currency," nor does he state that any local signification had ever attached to that term. He states merely of what it was composed. There is no evidence showing whether cash or bank notes were received from Adams for these certificates. The cashier states, if in the daily adjustment of accounts between appellants and Adams there was a balance in his favor to the amount of the certificates, the collection was made by canceling such balance ; but the witness did not pretend to give the state of the account between appellants and Adams at the time of the collection, nor that the appellees knew of this practice, nor did he state what kind of bank bills, or bank notes, if any, were received from Adams.

As to the tender, it is not kept up by producing it in court, if it was a proper tender. But what was it? When the demand was made by appellees, on the 14th of June, appellants offered to pay bank notes of Illinois banks, chiefly of those banks which on the railroad list of Illinois banks were rated at sixty, seventy and eighty cents on the dollar, and which were not then current bank notes—they were not at that day "Illinois currency," because they did not circulate as money.

Was there any obligation on the appellees to receive these depreciated notes? If so, whence did it arise? Certainly not because they had authorized the receipt of such notes, in payment of the certificates, or that they were so received, or, in fact, that any bank notes were received in their payment. The evidence of the cashier shows that on this day, June 14th, there were three Illinois banks whose notes were circulating at par with coin, or nearly so. Such notes or coin, the appellees proposed to take, when the offer to pay in discredited notes was made.

The cashier further states, that the appellants had, at this very time, bank notes more valuable than those they offered. He says, when the currency began to run down in 1860 and 1861, their bank commenced assorting the notes received—had an assorting clerk, who assorted out of the common fund the best of the money and kept it as a reserved fund. With the residue, they paid checks and balances, and claims on the bank. That is to say, the trash they received was paid out to their customers—the good notes were reserved for their own special purposes, to be converted into coin and hoarded!

On principles of correct banking, depositors, next to bill holders, are entitled to preference. It was once, in the more virtuous days of our republic, deemed dishonorable to deny a depositor, but in this age of lax principles, it is quite a common occurrence. This offer of the depreciated notes was no tender, and the bank had better current notes reserved, nearly equal to coin, which they withheld.

The remaining question presented in this third point is, that the contract being for currency or bank notes, they could not be recovered under the counts in this declaration, they being for money.

The authorities referred to by appellants in support of this objection, have no bearing that we can perceive, on the point made. The case of *Stevenson* v. *Unkefer*, 14 Ill. 104, was a case in which the question of usury arose on a note payable in "Baltimore bank notes" with twelve and a half per cent. interest, and the court say, as the value of these notes was liable to fluctuate, they might become depreciated, if not valueless, in the market, by the end of the three years for which the credit was given, so that the lender might lose more than the whole interest agreed to be paid.

The case from Serg. & Rawle, 94, only decides that under the statute of Pennsylvania, a note for five hundred dollars, payable "in notes of the chartered banks of Pennsylvania," is not a negotiable note, on which the indorser can sue in his own name. The same is the case in 3 Humph. 171; there it was decided that an action of debt did not lie upon a note payable "in current bank notes," and such a note was not negotiable.

The case in 7 Mo. 596, was a case where a bill of exchange made payable in currency, was held not to be a bill of exchange within the meaning of the statute of Missouri; and when a note or bill is made payable in currency, the value of the currency at the time of payment must be ascertained, in the same manner as the value of any other commodity. The case in 1 Halst. 226, decides that an action of debt will not lie on articles of agreement to pay a certain sum in bank notes, as they are not money.

This court has decided most of these questions. In *Swift* v. *Whitney et al.*, 20 Ill. 145, we said that a receipt for $477.23, "payable in currency," was an instrument admissible in evidence under the common counts, and on default, the clerk could assess the damages. They are negotiable under our statute, if not by the law merchant. The court could assess the damages, because by "currency" is understood bank bills or other paper money issued by authority, which pass as and for coin. This case, and the cases cited by Justice WALKER, settle in a great measure the law of this case. For as Illinois currency had no local signification, a note payable in such currency, must be understood to be payable in coin, or in such bank notes as were current with coin requiring no proof of value, *aliunde*, currency, or current bills, are deemed to be the value of cash, and exclude the idea of depreciated paper money. In *Moore* v. *Morris*, 20 Ill. 258, we considered "good current money" to be the coin of the constitution, or foreign coins made current by act of Congress, unless there be evidence giving to those terms a *local* signification.. Good current money, and currency, are therefore convertible terms. To the same effect is the case of *Trowbridge* v. *Seaman*, 21 Ill. 101. We do not question the decision in 3 Littell, 245, but cannot see its application to this case. That case rests on a foundation totally different from this. That was a contract to pay $800 "in such bank notes as were received on deposit at a certain bank," and the court held it was a contract to pay eight hundred paper dollars, and this court followed it in *Smith* v. *Dunlap*, 12 Ill. 184. Had these certificates been made payable in such notes as the

appellants might suppose it to be their interest to receive at their counter, then they would be justified in paying out the least valuable of them in satisfaction. They could select the worst in their " assortment."

As to the instructions asked by appellants, the first is directly in the face of all we have said in the views here presented. It has nothing in the facts on which to base it, and it was properly refused. The evidence shows most clearly, that the moneys collected were not *held* by the appellants, but went into the general funds of the bank, and were subject to the use of the bank, the appellees having credit, only, for the amount. It became their own money for their own use, subject only to the claims of appellees, as any other creditor.

By the second instruction the court is asked to tell the jury that appellees could not recover under the money counts, if the evidence shows the authorized receipt, by appellants, of Illinois bank notes only.

If that was the case, the instruction was improper, for, as we have shown, by decisions of this court, appellees were entitled to recover upon those counts, if the fact had been that Illinois bank notes were received as money, and treated as such. Authorities besides that of this court are numerous on this point. *N. Hope Del. Bridge Co.* v. *Perry*, 11 Ill. 469; *Miller* v. *Race*, 1 Burrow, 451; *Wright* v. *Read*, 3 Term R. 554; *Ainslie* v. *Wilson*, 7 Cowen, 662. This case decides that property paid or received as money, will support the action for money paid or had and received, the same as if money itself had been paid or received. *Young* v. *Adams*, 6 Mass. 188; *Bank of Missouri* v. *Benoist et al.*, 10 Mo. 524; and many others might be cited.

The third instruction is ingeniously drawn. There is no evidence in the record to warrant the jury in believing appellants were authorized to take depreciated currency, or that they received such currency in payment of these certificates and held them at the risk of appellees. There is not a particle of evidence going to show it was a special deposit, or that appellants were mere bailees. The instruction, therefore, was calculated to mislead the jury. It was properly refused.

The fourth, fifth and sixth instructions were given for the appellees as asked. They do not differ materially from those refused, and present their case in a light quite as favorable as it deserved.

The instructions given for the appellees embody the views we have endeavored to present, and declare the law correctly.

We have no doubt, on the facts and law of the case, that these certificates being for " $945.21 Illinois currency," and payable " in like funds," entitled the holder to receive current funds when demanded. And if no other funds were current, at the time of the demand, than coin, the coin should be paid.

The jury, however, having found only the value of the currency, at the time it was deposited, and no exceptions taken to the verdict, we can do no more than affirm the judgment.

CATON, C. J. I concur in affirming this judgment.

*Judgment affirmed.*