# WILLIAM H. W. CUSHMAN

*v.*

# B. F. CARVER & CO.

1. BANKS—*of deposits between bankers—depreciated currency.* At a time when the banks in this State were receiving and paying out the paper of Illinois banks, which were of doubtful solvency and their paper at a discount, two bankers, in the usual course of their business, had mutual accounts growing out of remittances and collections, and the relations existing between them were such that the depositor could withdraw his funds at pleasure, and the receiver of the deposits could in like manner return them: *Held,* that in the absence of any arrangement between them on the subject, the holder of the deposits would be compelled to pay or return in current or par funds.

2. But where the banker who owned the deposit, having a considerable balance to his credit with his correspondent, notified the latter by letter that he should require that any remittances he might desire should be made in the paper of certain banks, which he specified, this direction left the banker who held the deposits at liberty to make the remittances in bills of any of the banks so designated, which the party to whom the remittances should be made would be compelled to receive at their nominal value.

3. And after such letter of direction, the holder of the deposits was thereby authorized to remit to the owner the entire balance which stood to his credit, without further order, in the class of paper so specified, at its nominal value, or in the paper of any one of the banks named, as it was not stated that payment must be made in the bills of all those banks. Nor would this right of the holder of the deposits be affected by the fact that subsequent to the notice given him, and before he had received any further advice on the subject, the paper of such banks had continued to depreciate in value.

4. And where the banker holding such deposits, after he had received such letter, and when the paper of the designated banks had become depreciated subsequent to the receipt of the letter, transmitted to the owner his entire balance in a package, which the latter retained for about a week, knowing it was a remittance from his correspondent, and the amount of it, and during that time did not open the package to learn the character of its contents, nor notify his correspondent that he would not receive it, he waived, by such delay, even any right he might have had, to refuse to receive at its nominal value any of the paper contained in the package.

Appeal from the Superior Court of Chicago; the Hon. John A. Jameson, Judge, presiding.

This was an action of assumpsit brought in the court below by Cushman against Carver & Co., a trial of which resulted in a finding and judgment in favor of the defendants. The plaintiff appeals. The circumstances out of which the controversy arose are set forth in the opinion of the court.

Mr. B. C. Cook, for the appellant.

Messrs. Beckwith, Ayer & Kales, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

It appears that in the spring of the year 1861, appellant was a banker at Ottawa, and appellees, under the name of B. F. Carver & Co., were bankers in Chicago. According to the usual course of bankers doing business with each other, they had mutual accounts, growing out of remittances. Prior to the 7th of May of that year, there was a large balance of money standing to the credit of appellant in the hands of appellees, amounting to some $7,500. At and previous to this time, the banks at Chicago, and throughout the State, were receiving and paying out in the course of their business the paper of Illinois banks, which were then of doubtful solvency and their paper at a discount. Appellant, being aware of the fact, addressed a letter to appellees, dated the 29th of April, 1861, upon the subject of this depreciated currency, and desired to know of them the kind of currency with which they expected to pay his drafts, and enclosed to them a list of banks the paper of which he would require in case he should desire remittances.

It also appears that a portion of the balance standing to appellant's credit was made up of an inferior class of currency to that named in the list thus furnished, which he had

previously sent them, on account of his customers, and which was not current at Ottawa; that from that time forward appellant did not send to, or receive from them, any currency but such as was included in the list he sent them.

On the 7th of May, 1861, appellees sent to appellant the $7,500 standing to his credit, in the kind of funds named in the list furnished by appellant. The money was enclosed in a package directed to appellant, but it was not accompanied by any letter or other explanation, but the amount it contained was marked on the cover. Appellant wrote appellees, saying he had received the package, without any letter of advice, and had deposited it unopened in his safe. To this communication he received no reply.

On the 13th of that month, appellant opened the package, and wrote Carver that he had opened the package and found it contained the very poorest currency of their bankable funds, there not being a dollar of the better class of currency; that he would try to get rid of it if it were possible; that he would enter into no arrangement for the circulation of the rejected currency, and that he had concluded to withdraw his collections in Carver's hands, and would, on the next day, send an order on him by private hands for them. On the 17th or 18th, appellant's clerk saw Carver, and asked why the money had been sent, when he replied that, "I thought it might just as well be in your safe as ours."

It further appears that the currency sent had depreciated from ten to fifteen per cent. after appellant had sent the list, and before the money was received by him; that it was then worth about seventy-five cents on the dollar. Appellant disposed of a portion of the bills, and some of them remained on his hands. On these facts, the court found in favor of defendants, when a motion for a new trial was entered, but overruled by the court, and judgment rendered according to the finding, from which this appeal is prosecuted.

On the part of appellant, it is contended that he should not be charged with more than the value of the bills at the time the

package was received.   On the other hand, appellees insist that he should be charged with the bills at their nominal value. The relation the parties sustained to each other was such that appellant could, at pleasure, withdraw his funds from appellees, or they could, in like manner, restore them to him, but, in the absence of any arrangement, they would have been compelled to pay in current or par funds.   Were appellees, then, authorized to return to appellant such funds as he had named in his letter of the 29th of April?   Had he drawn on them for that or any other amount without further advice, there could be no doubt that they could have so paid, because he had notified them that such funds would be required to meet his drafts.   And it is equally manifest that had they, on the receipt of that letter, forwarded to him his entire balance, he would have been compelled to receive it, because he had fixed it as the medium by which it could be discharged. And not only so, but it might have been paid in bills of any bank named in the list, as it was not stated that payment must be in bills of all the banks specified.   *Marine Bank* v. *Rushmore*, 28 Ill. 463.   Nor was such proposition to receive such money on drafs ever withdrawn.

It might, however, be urged that the bank paper named in the list had depreciated before it was sent forward to appellant, and hence it could not be implied that he would still receive such funds.   Even if such were his right, he seems to have waived it by retaining the money after it was received. He did not open the package to learn its contents, but simply placed it in his safe, where he permitted it to remain for almost a week before he opened it.   Yet he seems at once upon its receipt to have written to Carver, informing him of the fact that he had thus deposited it in his safe.   It does not matter that he received no letter of advice, as he knew whence it came, and immediately wrote Carver on the subject.

His own account, no doubt, informed him that it was from appellees, as he must have had them charged with all sums in their hands on his account, and he only had to balance

their account to see that it corresponded with the sum contained in the package. He failed to return it, or to inform him that he declined to receive it as payment of the balance due to him, on account of its depreciation. It is a matter of history that at that time our banks were in a precarious condition, and tottering to the fall that soon followed, and that their paper was daily depreciating. Under such circumstances, his inaction was unwarranted. He should have acted promptly in notifying appellees that he would not receive the money, and that it was subject to their order. They had a right to suppose, until he notified them to the contrary, that he would receive the money named in the list furnished in his letter of the 29th of April. Had he changed his mind, he should have promptly notified them of the fact. He neither returned it, nor notified them that he would not receive it, until he had retained it for almost an entire week. And having failed to do so, we think the court was warranted in the inference that appellant made the money his own, at its nominal value. We perceive no error in this record, and the judgment of the court below is affirmed.

*Judgment affirmed.*