(No. 21980.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW A. SCOWLEY, Plaintiff in Error.

*Opinion filed October 21, 1933.*

ELWYN E. LONG, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Plaintiff in Error, Andrew A. Scowley, was found guilty under an indictment charging him with the violation of paragraph 253 of chapter 38, (Smith's Stat. 1929, p. 998,) which provides: "Whoever, with intent to cheat or defraud another, designedly by color of any false token or writing, or by any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, personal property or other valuable thing, shall be fined in any sum not exceeding $2000, and imprisoned not exceeding one year, and shall be sentenced to restore the property so fraudulently obtained, if it can be restored."

The grand jury returned the indictment in question on November 20, 1931. It was averred, among other things, that Frankie T. Westbrook and the defendant made a written agreement October 22, 1930, under which she was to convey certain Kansas City, Missouri, real estate, and in exchange the defendant was to convey to her real estate in Birmingham, Alabama, when he acquired title thereto;

further, he was to assign a second mortgage in the sum of $30,000, junior to a first mortgage of $42,500 covering other real estate in the city of Birmingham aforesaid, and certain other real estate in said city and State. One of the terms of the contract was that Mrs. Westbrook was to pay off and have released a second mortgage or deed of trust for $20,000 on the Kansas City property. The indictment further charges: "And said Frankie T. Westbrook relying on the promises of said Andrew A. Scowley to carry out said contract, thereafter, on, to-wit, the twenty-third day of October, in the year of our Lord one thousand nine hundred and thirty, paid off said mortgage of $20,000 and it thereupon became relieved of said last mentioned lien. The grand jurors aforesaid, upon their oaths aforesaid, do further present that said Andrew A. Scowley thereafter, on, to-wit, the first day of November, in the year of our Lord one thousand nine hundred and thirty, in said county of Cook, in the State of Illinois aforesaid, well knowing the premises and the terms of said agreement, unlawfully, willfully, designedly, fraudulently and falsely did pretend to said Frankie T. Westbrook that he, said Andrew A. Scowley, then and there had ownership and control of said real estate and of said mortgages on real estate situated in said city of Birmingham, and that he, said Andrew A. Scowley, could convey clear title thereto as provided by the terms of said contract as aforesaid, whereas in truth and in fact, as said Andrew A. Scowley then well knew, said mortgage for $30,000 was not then a lien upon said real estate in Alabama, but the total interest of the person that executed said mortgage for $30,000 had been, prior to the execution of said contract, entirely removed and extinguished by certain foreclosure proceedings, and said Andrew A. Scowley did not, either at the time he executed said contract or at the time he made said false pretenses, have any interest in said real estate or in the aforesaid mortgages on said real estate in Alabama, which false

pretenses, the same then and there being false pretenses, were then and there made by said Andrew A. Scowley to said Frankie T. Westbrook with the design and for the purpose of then and there inducing said Frankie T. Westbrook to sign and execute a certain written instrument, to-wit, a certain deed of said real estate in Missouri, whereby said Frankie T. Westbrook conveyed to said Andrew A. Scowley said real estate in Missouri, and thereupon to have said Frankie T. Westbrook deliver to said Andrew A. Scowley said deed of said real estate in Missouri after the same had become signed, and to obtain the signature of said Frankie T. Westbrook to said deed and written instrument; and said Frankie T. Westbrook, relying on said false pretenses, believing said false pretenses to be true and being deceived thereby, was then induced by reason thereof, after the making of said false pretenses, to sign and affix the signature of said Frankie T. Westbrook to said written instrument and deed and to then execute and deliver said written instrument and deed, and said Frankie T. Westbrook did then sign and affix the signature of her, said Frankie T. Westbrook, to said deed and written instrument and did then execute and deliver said written instrument and deed, and said Andrew A. Scowley then, in said county of Cook, by means of said false pretenses, knowingly, designedly, willfully, fraudulently and unlawfully obtained the signature of said Frankie T. Westbrook to said written instrument and deed, which false pretenses were then and there made by said Andrew A. Scowley to said Frankie T. Westbrook with the intent to cheat and defraud said Frankie T. Westbrook, and said Andrew A. Scowley so obtained said signature, in the manner aforesaid, with the intent to cheat and defraud said Frankie T. Westbrook, and by means of the false pretenses aforesaid and said obtaining of said signature in the manner aforesaid, said Andrew A. Scowley did then in said county of Cook cheat and defraud said Frankie T. West-

brook, and at the time said Andrew A. Scowley so as aforesaid pretended, he well knew said pretenses to be false."

A motion to quash was filed and overruled. As set out in the abstract the motion was general, and the action of the trial court in overruling said motion was correct, for the reason that in our opinion the indictment substantially stated an offense under the foregoing section of the Criminal Code.

Defendant entered his plea of not guilty and the trial was had before a jury, which returned a verdict of guilty. Motions for a new trial and in arrest of judgment were overruled. The court fixed the punishment at one year in the house of correction and a fine of $2000. A writ of error was prosecuted from the Appellate Court for the First District and the judgment of the trial court was affirmed. A writ of error was thereupon sued out of this court.

Numerous errors have been assigned by plaintiff in error, the essence of which is that the trial court erred in its rulings on the admission and rejection of evidence; in engaging in the examination of witnesses and their cross-examination, particularly of the plaintiff in error; and that the trial judge displayed a bias during the trial of the case which was manifestly prejudicial to plaintiff in error. It is further urged that the verdict was not supported by the evidence, and that the trial court erred in overruling the motions for a new trial and in arrest of judgment.

Frankie T. Westbrook, a woman about seventy-nine years of age, resided in Kansas City, Missouri, in 1930, and was interested in various parcels of real estate there and in the State of Alabama. Her daughter, Mrs. Amie H. Priestley, lived in Chillicothe, Illinois, and for several years had aided her mother in looking after her real estate as her agent. On January 3, 1930, Mrs. Westbrook appears to have signed a power of attorney to this daughter empowering her to sell, lease, mortgage and hypothecate all

of her real estate wherever situate. The execution of this power of attorney was not acknowledged until January 30, 1932. Mrs. Westbrook had some interest in a large brick building in Kansas City, known as the Priestley building, upon which there was, apparently, a construction first mortgage for $100,000. This investment was not profitable, and at one time the holder of the deed of trust had instituted foreclosure proceedings. Satisfactory arrangements were made and the foreclosure proceedings were abandoned. A fire and explosion occurred in the Priestley building, and thereafter, in order to get insurance, title was conveyed to one Sterritt, with power in Mrs. Westbrook to compel a re-conveyance. There was a junior mortgage securing a supposed indebtedness of $20,000, which appears to have been owing, if at all, to Mrs. Westbrook. In addition there were seven mechanics' liens filed of record and three or four lawsuits on file against this building.

About October 12, 1930, Mrs. Priestley went to Chicago in answer to an advertisement of the Chicago Realty Company with a view to trading or disposing of the Priestley building. At the offices of said company she met the plaintiff in error and learned that he had mortgages and real estate in Alabama. Mrs. Priestley showed him a picture of the Priestley building and asked him what he had in Alabama to exchange for it. Plaintiff in error gave her a letter of introduction to one Anderson in Birmingham, Alabama, together with a description of certain real estate which he requested Anderson to show Mrs. Priestley, and told her what property was security for a second mortgage for $30,000, which mortgage he owned, which was junior to a first mortgage for $42,500. Mrs. Priestley then went to Birmingham and made certain investigations and was shown the property by Anderson. On October 22, 1930, she returned to Chicago and an executory contract was entered into with the United States Realty Company by plaintiff in error and Mrs. Westbrook by Mrs. Priestley,

her agent, by which it was agreed to convey the Priestley building in Kansas City free from the $20,000 second mortgage thereon, and to give in addition a promissory note for $1000 in exchange for, first, certain Alabama real estate; second, either certain vacant lots in Alabama or other Alabama real estate concerning which Scowley had a contract with other parties if and when he acquired this other real estate; and third, a second mortgage for approximately $30,000, junior to a first mortgage for $42,500. This executory contract provided, among other things, as follows: "Each party to deliver to the other a certificate of title within sixty days from date, and in the event of defects not cured within said time this agreement to be null and void unless waived." On or about November 1, 1930, Mrs. Westbrook executed and delivered, through Mrs. Priestley, a deed conveying the Priestley building to Scowley, and on or about October 30, 1930, a notice from Mrs. Westbrook to John Z. Sterritt, trustee, was executed by Mrs. Westbrook revoking the trust and directing a conveyance of the Priestley building to Scowley within thirty days. The promissory note for $1000 was executed and delivered to Scowley.

Plaintiff in error conveyed certain real estate and assigned and delivered the second mortgage and notes for approximately $30,000 to Mrs. Westbrook. Mrs. Priestley was unable to furnish the abstract of title to the Priestley building, and plaintiff in error, by personal investigation at the First National Bank in St. Louis and in Kansas City, found that the title was not merchantable. On the other hand, Mrs. Priestley had gone to Birmingham and had attempted to collect certain of the notes secured by the second mortgage for $30,000. She had been unsuccessful in her efforts and by investigation had found that the first mortgage for $42,500 was foreclosed and that a sale had been had on August 3, 1930, under that foreclosure. She returned to Chicago from Alabama on or about Decem-

ber 14, 1930, and had a conversation with Scowley. She did not then disclose to him the fact that she knew the first mortgage for $42,500 had been foreclosed, but she insisted on closing the transaction, and admits that Scowley gave her one dollar to pay for sending a telegram to the First National Bank of St. Louis, which held the mortgage for $100,000 on the Kansas City property known as the Priestley building, announcing that the deal had been closed. Shortly after December 14, 1930, Mrs. Priestley again talked with plaintiff in error and told him she had learned about this foreclosure. He offered to either rescind the transaction or to give her other property in lieu of the $30,000 second mortgage and notes and sent her a list of the real estate to be substituted. At various times Mrs. Priestley and her attorney, Green, demanded on behalf of her mother, Mrs. Westbrook, from $3000 to $7500 if the transaction were rescinded, and at no time would agree to accept any of the other property submitted by plaintiff in error and refused the restoration of the property conveyed by Mrs. Westbrook unless additional money was paid as aforesaid. At about this time the First National Bank of St. Louis instituted foreclosure proceedings on the Priestley building on account of non-payment of interest. The record discloses that plaintiff in error's only interest under the $30,000 second mortgage on the Alabama property was a right to redeem, within two years from August 3, 1930, from the foreclosure of the $42,500 first mortgage. Mrs. Westbrook did procure the cancellation and release of the $20,000 second deed of trust on the Priestley building, but the record does not disclose the date of this transaction. It appears to have been done subsequent to October 22, 1930, the date of the executory contract.

Andrew A. Scowley did not disclose to Mrs. Westbrook or Mrs. Priestley the fact of the foreclosure of the $42,500 first mortgage on the real estate in Birmingham at the time of making the executory contract, and neither Mrs. Priestley

nor Mrs. Westbrook disclosed the fact of the fire and explosion that had occurred in the Priestley building, the fact that there were suits and mechanics' liens against it, the fact that the $20,000 second deed of trust secured no indebtedness, in fact, against said building, nor the further fact that it had been transferred to John Z. Sterritt, trustee, to get insurance on the building, until after the parties had entered into the executory contract of October 22, 1930. After the difficulties arose between the parties Scowley made a quit-claim deed re-conveying the Priestley building to Mrs. Westbrook, and gave it, together with the $1000 promissory note, to his attorney, with instructions to deliver them to Mrs. Westbrook. Scowley refused to accede to the demands for money in order to obtain a rescission of the agreement. Mrs. Priestley employed an attorney, the matter was presented to the grand jury of Cook county, and this indictment was returned.

As to the contention of the defendant in error that the bill of exceptions as abstracted does not show that it contains all of the evidence heard at the trial, an examination of the abstract discloses that at the close of the evidence for the People the following appears: "Plaintiff rests;" at the close of the defendant's evidence appears, "The defendant rests," and at the close of rebuttal evidence for the People, "People rested rebuttal." This court has frequently held that no express statement is required that the bill of exceptions contains all of the evidence offered at the trial, it being sufficient that such fact be made to affirmatively appear from apt words contained therein. In *Marine Bank of Chicago* v. *Rushmore,* 28 Ill. 463, this court said: "It was immaterial whether the fact is expressly stated that the bill of exceptions contains all the evidence or is manifested in any other way. It is not expressly stated in this bill of exceptions that it contains all the evidence offered, but it states, after reciting the evidence, 'The testimony here closed.' This is equivalent to an express averment

that it was all the evidence heard in the cause." (See, also, *People* v. *Scanlan,* 265 Ill. 609.) In view of these holdings the above mentioned words are sufficient to show that the bill of exceptions contained all the evidence introduced at the trial of this case.

In this case the intent with which the acts charged were done is a material averment, and unless the facts show that the acts were done with the intent to cheat and defraud, the defendant should not stand convicted. A careful scrutiny of the record shows that the evidence is conflicting as to the existence of a criminal intent on the part of the plaintiff in error in obtaining the deed of Mrs. Westbrook and delivery thereof.

In view of the state of the record as to this material averment, the rulings and conduct of the trial court become highly important. The record shows that after Mrs. Priestley had testified on direct examination that her mother, Mrs. Westbrook, had paid off the $20,000 second mortgage on the Priestley building, the court sustained objections to questions, on cross-examination, as to what, if anything, was paid to discharge this mortgage and refused to permit counsel for plaintiff in error to inquire into this transaction. This was clearly error and tended to prejudice the rights of the plaintiff in error, since it was alleged in the indictment that he had caused her to pay said note for $20,000 and obtain the release of the second mortgage.

After a witness named Hardin had testified, following Mrs. Priestley, the court of his own motion recalled Mrs. Priestley and conducted a lengthy examination. Also, after the direct examination and cross-examination of the plaintiff in error, the court proceeded with a lengthy cross-examination, which as abstracted occupies approximately four pages. This examination conducted by the court was of such character as reasonably to have caused the jury to believe that the court was convinced of the guilt of the plaintiff in error. There were also numerous colloquies be-

tween the court and counsel for the plaintiff in error which clearly may have indicated to the jury that the court believed the plaintiff in error to be guilty. Such extended interrogation of witnesses has been repeatedly condemned by this court, and we believe that in this case such conduct was prejudicial to the rights of the plaintiff in error. In view of the conflicting evidence such rulings and conduct on the part of the trial court are cause for reversal of the judgment in this case.

In view of what has already been said it is not necessary to pass upon every ruling of the trial court on objections to the admission or refusal of evidence.

For the reasons given, the judgments of the trial court and of the Appellate Court are hereby reversed and the cause remanded.       *Reversed and remanded.*